**SULLIVAN & CROMWELL LLP**

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-293-6330

WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*
_____

NEW YORK • LOS ANGELES • PALO ALTO
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 28, 2017

By ECF

Honorable Paul A. Engelmayer,
   Thurgood Marshall United States Courthouse,
      40 Foley Square,
         New York, New York 10007-1312.

         Re:    *Shak, et al.* v. *JPMorgan Chase & Co., et al.*, No. 15-cv-992;
                   *Wacker* v. *JPMorgan Chase & Co., et al.*, No. 15-cv-994;
                   *Grumet* v. *JPMorgan Chase & Co., et al.*, No. 15-cv-995

Dear Judge Engelmayer:

         On behalf of Defendants in the above-captioned actions, I write pursuant to Rule 37.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, and Rule 2.C of Your Honor's Individual Rules and Practices in Civil Cases, to respectfully request an informal conference to resolve discovery disputes on two issues. *First*, Plaintiffs refuse to produce documents concerning the expert analysis used in their complaints, even though they waived any work product privilege by putting the analysis at issue in the complaints themselves and when opposing Defendants' motion to dismiss. *Second*, Plaintiffs refuse to provide discovery of their assets, which is relevant to whether their injury was caused by margin requirements instead of Defendants' supposed conduct—an issue this Court held was "a substantial one" that "may well present a basis for a colorable summary judgment motion." *Shak*, ECF No. 78.

**I.    Plaintiffs Forfeited Work Product Protection over Documents Concerning the Expert Analysis in their Complaints.**

         In their Second Amended Complaints, Plaintiffs relied heavily on the analysis of a "consulting expert . . . to establish the artificiality of the silver futures spreads during the period January 2011 to May 2011." SSAC ¶ 158; *see also id.* ¶¶ 158-245 (detailing the consulting expert's conclusions). Plaintiffs adopted the same approach in opposing Defendants' motion to dismiss and on appeal, making extensive reference to their consulting expert's analysis. *See, e.g.*, Brief of Plaintiffs-Appellants at 2, 4-5, 10, 16, 24, 29-31, 46-48, *Wacker* v. *JP Morgan Chase & Co. et al.* (No. 16-2484) (2d Cir. Sept. 7, 2016). The Second Circuit took note of this analysis. In its order sustaining Plaintiffs' complaints, the Court of Appeals specifically pointed to the consulting expert's use of "the twelve month Silver Indicative Forward Mid Rates (SIFO) as a benchmark for determining

Hon. Paul A. Engelmayer -2-

proper levels for the bid/ask spreads for the long-dated silver futures market." *Wacker* v. *JP Morgan Chase & Co*, 678 F. App'x 27, 30 (2d Cir. 2017).

On remand from the Second Circuit, Defendants propounded document request No. 36, seeking discovery concerning the consulting expert analysis used to sustain the Plaintiffs' complaints. Ex. A at 10 (Defs.' First Set of Requests for Production of Documents). Plaintiffs objected on the basis that Defendants' request "calls for a legal and expert conclusion and for documents subject to the work product doctrine and the attorney client privilege." Ex. B at 19 (Pls.' Responses and Objections). This objection is meritless. Although a non-testifying expert's analysis is typically protected from disclosure under Federal Rule of Civil Procedure 26(b)(4)(D), it is well-established that "a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). That is exactly what Plaintiffs are trying to do here.

Judge Sweet's opinion in *Financial Guaranty Insurance Company* v. *Putnam Advisory Company, LLC*, 314 F.R.D. 85 (S.D.N.Y. 2016), is directly on point. There, the plaintiff "retained a firm of economic analysts" to produce a report supporting the allegations in the complaint, and after prevailing on motion to dismiss, refused to grant discovery over that analysis. *Id.* at 90. Judge Sweet granted the defendant's motion to compel, holding that "by utilizing the report in the SAC and before the Second Circuit, [plaintiff] waived its right to object to the disclosure of the report's contents." *Id.* The facts here are almost identical. Plaintiffs relied on expert analysis in their complaints and pressed those arguments before the Second Circuit; having put that economic analysis at issue in this case, Plaintiffs cannot now cry privilege.

Plaintiffs have tried to distance themselves from the expert analysis by stating they will not use it going forward in this action, but that is insufficient to warrant non-disclosure. Judge Sweet rejected that very argument in *Putnam*, holding that because "[plaintiff] injected the contents of a privileged communication into the litigation by utilizing it in connection with a dispositive motion, the 'at issue' waiver applies." *Id.* (internal quotation marks and alterations omitted). Moreover, even if Plaintiffs do not rely on the exact same analysis at future stages of this litigation, any differences between the analysis in their complaints and their future expert reports would provide fruitful grounds for cross-examination. Accordingly, Defendants are entitled to the discovery concerning the analyses created by Plaintiffs' consulting experts and referenced in the Complaints, *i.e.*, any reports reflecting those analyses and the data, calculations and programs necessary to recreate those analyses.

**II.     Defendants Are Entitled to Discovery Regarding Plaintiffs' Assets.**

On remand from the Second Circuit, Defendants argued in their renewed motion to dismiss that Plaintiffs had failed to plead antitrust injury—that is, injury "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Shak* v. *JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 490 (S.D.N.Y. 2016) (internal quotation marks omitted); *see Shak*, ECF No. 75. According to their complaints, Plaintiffs liquidated their positions—which they claim were

Hon. Paul A. Engelmayer                                                                                                        -3-

fundamentally "sound"—because of an inability to meet margin requirements set by the futures exchange, and not because of Defendants' purported anticompetitive conduct. *See, e.g.*, SSAC ¶ 123. While this Court determined that Plaintiffs had pled sufficient facts to raise their "right to relief above a speculative level[,]" it also noted that, "should the case remain unresolved as of the close of discovery, this issue is likely to be a substantial one, and may well present a basis for a colorable summary judgment motion." *Shak*, ECF No. 78 (internal quotations omitted). Accordingly, Defendants propounded document request No. 28 asking Plaintiffs to produce "[d]ocuments sufficient to show Plaintiffs' assets for each day, week, and month, including but not limited to documents sufficient to show Plaintiffs' liquid assets for each day, week, and month." Ex. A at 9 (Defs.' First Set of Requests for Production of Documents).

Plaintiffs objected to the request, proposing instead to produce only "Plaintiffs' *liquid* assets for each day, week, and month that Plaintiffs *would* have used to support their trading, including but not limited to documents sufficient to show Plaintiffs' *liquid trading assets* for each day, week, and month." Ex. C (7.19.2017 Ltr. from K. Lerner to A. Toprani) (emphasis added). This proposal is unacceptable. *First*, allowing Plaintiffs to restrict the production to "liquid assets" and "liquid trading assets" would exclude significant assets that could have been used directly or indirectly (as collateral) to satisfy margin requirements—for example, real estate investment holdings. *Second*, and more importantly, Plaintiffs' restriction to assets they "*would* have used" necessarily excludes the most important category of assets—those plaintiffs *could* have used but did not. There is no basis in the law for plaintiffs to circumscribe discovery in this subjective way, to whatever assets they deem eligible. Efforts to meet and confer on this issue have not resulted in an agreement.

By putting their ability to meet margin requirements at issue, Plaintiffs became obligated to produce documents on that issue. However, to alleviate some burden on Plaintiffs, Defendants propose—as they did during the Parties' meet-and-confer—adding the italicized materiality threshold to the request for documents, as follows:

> Documents sufficient to show Plaintiffs' assets for each day, week, and month that could have been used or sold to satisfy COMEX margin requirements. *'Assets' as used herein is defined as 'any property or rights that are owned by a person or entity that have a monetary value of greater than one thousand United States dollars.'*

Defendants respectfully request that Plaintiffs be directed to respond to Defendants' document request No. 36 concerning the expert analysis in the complaints, and document request No. 28 concerning their assets, as narrowed above.

                                                                                   Respectfully submitted,


                                                                                   /s/ Amanda F. Davidoff
                                                                                   Amanda F. Davidoff

cc:      All counsel of record (via ECF)