## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL SHAK, SHK DIVERSIFIED, LLC (and/or their successors in interest), | |
| Plaintiffs, | |
| v. | Case No. 15 Civ. 992 (PAE) |
| JP MORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), | Hon. Paul A. Engelmayer |
| Defendants. | |
| THOMAS WACKER, | |
| Plaintiff, | |
| v. | Case No. 15 Civ. 994 (PAE) |
| JP MORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), | Hon. Paul A. Engelmayer |
| Defendants. | |
| MARK GRUMET, | |
| Plaintiff, | |
| v. | Case No. 15 Civ. 995 (PAE) |
| JP MORGAN CHASE & CO., J.P. MORGAN CLEARING CORP., J.P. MORGAN SECURITIES LLC, J.P. MORGAN FUTURES, INC. (now known as J.P. MORGAN SECURITIES LLC), | Hon. Paul A. Engelmayer |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT
## OPINIONS AND TESTIMONY OF DR. CRISTIAN SANTESTEBAN

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND AND LEGAL STANDARDS ........................................................................3

ARGUMENT ............................................................................................................................4

I.      Dr. Santesteban's ███████████████ Is Based on Unreliable and
        Irrelevant Analysis, and Is Therefore Inadmissible. ....................................................4

        A.      The Purported "████████████████ Is Unreliable. ...........................5

                1.      Dr. Santesteban's ████████ Does Not Address the Key Elements
                        of a █████████████ . ................................................................7

                2.      Dr. Santesteban's Model Adopts the Unprecedented, Undefended,
                        and Illogical Approach ███████████████
                        ██████████████████ ..................................................10

                3.      Dr. Santesteban's ████████ Depends on the Unfounded
                        Assumption that ████████████████████
                        Was "Exogenous." ..........................................................................11

                4.      Dr. Santesteban's ████████ Produces Contradictory Results with
                        Minor Changes to the Model. ..........................................................17

        B.      The Purported ███████████████████████ Is Irrelevant Because It
                Does Not Evaluate ████████████████ ....................................19

        C.      Dr. Santesteban's █████████████████████████████
                ████████████ Is Unreliable and Irrelevant, Leaving Dr. Santesteban with No
                Analysis of ██████████ .......................................................................21

II.     Dr. Santesteban's ███████████████ Is Based on Unreliable and Irrelevant
        Analyses, and Is Therefore Inadmissible. ..................................................................22

        A.      Aside from Being Unreliable, Dr. Santesteban's "██████████
                ████████████████ Is Irrelevant to His Opinion
                ████████████ . ........................................................................23

        B.      Dr. Santesteban's ██████████████████ Uses Unjustified Metrics that
                Provide No Evidence ██████████████ .....................................23

        C.      Dr. Santesteban's Analysis Showing that ██████████████
                ████████████████ Is Irrelevant to ████████ ...................26

        D.      Dr. Santesteban's Analysis ████████████████ Is Refuted by the
                Literature and the Facts, ████████████████████
                ...................................................................................................................27

                1.      Dr. Santesteban's Only Identified ████████████ Is Unsupported
                        by the Academic Literature, Contradicted by the Empirical
                        Evidence, and Undermined by Dr. Santesteban's Own Testimony...........27

2.     Dr. Santesteban's Opinion ███████████████████ Is *Ipse Dixit* and Based on Unreliable Analysis............29

E.     Dr. Santesteban's ██████████████████ Is Unsupported and Unreliable, and Thus Inadmissible ████████████. ................32

III.     Dr. Santesteban's Opinion ███████████████████████████ Is Unreliable and Inadmissible................34

A.     Dr. Santesteban's Analysis of ████████████████ Is Unreliable..................35

1.     Dr. Santesteban's Examination of ██████████████ Is Someone Else's Work—That Itself Is Unreliable. ....................35

2.     Dr. Santesteban's ██████████████████ Does Not Say Anything Reliable About ██████████████. ....................36

3.     Dr. Santesteban's ██████████████████████ Is Based on an Arbitrary Date Selection and Disregards Market Factors ████████ ███████.................38

B.     Dr. Santesteban's Theories ████████████████ ██ Are Unreliable....................39

1.     Dr. Santesteban's Opinions ██████████████ ██████████ Are Inconsistent with His Other Theories, Are Presented in a Highly Misleading Fashion, and Fail to Account for Significant Market Factors Affecting Settlements. ...........40

2.     Dr. Santesteban's ██████████████ Is Contradicted by Plaintiffs and Unfounded in the Record...................42

IV.     Dr. Santesteban's Remaining Opinions Are Unreliable, Irrelevant, or Both, and Therefore Inadmissible. .......................43

A.     Dr. Santesteban's Discussion ████████████████ ███████████████████ Is Irrelevant. .........................43

B.     Dr. Santesteban's Opinion ████████████████" Is Baseless and Fails to Consider Objective Metrics of Competition......................44

C.     Dr. Santesteban's Opinions ███████████████ Are Irrelevant, Unreliable, and Prejudicial.................................45

D.     Dr. Santesteban's Recitation █████████████████ Are Unhelpful to the Trier of Fact....................45

CONCLUSION..................................................................45

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*523 IP LLC* v. *CureMD.com*,
    48 F. Supp. 3d 600 (S.D.N.Y. 2014) ........................................................................................4

*Allen* v. *Dairy Mktg. Servs., LLC*,
    2013 WL 6909953 (D. Vt. Dec. 31, 2013) ..............................................................................8

*Amorgianos* v. *Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002) ..............................................................................................3, 5

*Atl. Richfield Co.* v. *USA Petroleum Co.*,
    495 U.S. 328 (1990) ............................................................................................................44

*Bickerstaff* v. *Vassar Coll.*,
    196 F.3d 435 (2d Cir. 1999) ..............................................................................................15

*Bonton* v. *City of New York*,
    2004 WL 2453603 (S.D.N.Y. Nov. 3, 2004) ......................................................................15

*Boucher* v. *U.S. Suzuki Motor Corp.*,
    73 F.3d 18 (2d Cir. 1996) ..................................................................................................14

*Broadway Delivery Corp.* v. *United Parcel Serv. of Am., Inc.*,
    651 F.2d 122 (2d Cir. 1981) ..............................................................................................24

*Brown* v. *Mermaid Plaza Assocs., LLC*,
    2016 WL 5802779 (E.D.N.Y. July 20, 2016) ....................................................................35

*Caruso* v. *Bon Secours Charity Health Sys. Inc.*,
    2016 WL 8711396 (S.D.N.Y. Aug. 5, 2016) ......................................................................23

*City of New York* v. *Grp. Health Inc.*,
    649 F.3d 151 (2d Cir. 2011) ...........................................................................................4, 21

*Cross Commerce Media, Inc.* v. *Collective, Inc.*,
    2014 WL 11343849 (S.D.N.Y. Aug. 21, 2014) ..................................................................45

*Daubert* v. *Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ..........................................................................................................3, 4

*Davis* v. *Carroll*,
    937 F. Supp. 2d 390 (S.D.N.Y. 2013) ...........................................................................10, 23

*Deutsch* v. *Novartis Pharm. Corp.*,
    768 F. Supp. 2d 420 (E.D.N.Y. 2011) ...................................................................40

*Emigra Grp., LLC* v. *Fragomen, Del Rey, Bernsen & Loewy, LLP*,
    612 F. Supp. 2d 330 (S.D.N.Y. 2009)....................................................................8

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
    281 F.R.D. 174 (S.D.N.Y. 2012) ..........................................................................40

*Fed. Housing Fin. Agency* v. *Nomura Holding America, Inc.*,
    2015 WL 539489 (S.D.N.Y. Feb. 10, 2015)....................................................28, 38

*Fed. Trade Comm'n* v. *Sysco Corp.*,
    113 F. Supp. 3d 1 (D.D.C. 2015) ..........................................................................18

*In re Fosamax Prod. Liab. Litig.*,
    807 F. Supp. 2d 168 (S.D.N.Y. 2011) ...................................................................42

*Freeland* v. *AT & T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006) ..........................................................................15

*General Elec. Co.* v. *Joiner*,
    522 U.S. 136 (1997)...............................................................................................29

*In re Jackson Nat. Life Ins. Co. Premium Litig.*,
    1999 WL 33510008 (W.D. Mich. Sept. 29, 1999) ................................................36

*Jefferson Par. Hosp. Dist. No. 2* v. *Hyde*,
    466 U.S. 2 (1984)...................................................................................................24

*Kentucky Speedway, LLC* v. *Nat'l Ass'n of Stock Car Auto Racing, Inc.*,
    588 F.3d 908 (6th Cir. 2009) ..................................................................................7

*Kramer* v. *Pollock-Krasner Found.*,
    890 F. Supp. 250 (S.D.N.Y. 1995)........................................................................18

*Lava Trading, Inc.* v. *Hartford Fire Ins.*,
    2005 WL 4684238 (S.D.N.Y. Apr. 11, 2005).........................................................6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018)............................................................. *passim*

*Luitpold Pharms., Inc.* v. *Ed Geistlich Sohne A.G. Fur Chemische Industrie*,
    2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015).......................................................45

*In re M/V MSC FLAMINIA*,
    2017 WL 3208598 (S.D.N.Y. July 28, 2017) ........................................................35

*Malaney* v. *UAL Corp.*,
    434 F. App'x 620 (9th Cir. 2011) .........................................................21

*Marria* v. *Broaddus*,
    200 F. Supp. 2d 280 (S.D.N.Y. 2002).....................................................42

*Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*,
    475 U.S. 574 (1986)...............................................................................44

*Meredith Corp.* v. *SESAC LLC*,
    1 F. Supp. 3d 180 (S.D.N.Y. 2014)..........................................................7

*In re Mirena IUD Prod. Liab. Litig.*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016)..............................................7, 20

*Colon ex rel. Molina* v. *BIC USA, Inc.*,
    199 F. Supp. 2d 53 (S.D.N.Y. 2001)......................................................20

*Morse/Diesel, Inc.* v. *Trinity Indus., Inc.*,
    67 F.3d 435 (2d Cir. 1995)....................................................................34

*Nat'l Collegiate Athletic Ass'n* v. *Bd. of Regents of Univ. of Okla.*,
    468 U.S. 85 (1984)...................................................................................9

*NYNEX Corp.* v. *Discon, Inc.*,
    525 U.S. 128 (1998)...............................................................................44

*Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Sec., LLC*,
    691 F. Supp. 2d 448 (S.D.N.Y. 2010)....................................................12

*PepsiCo, Inc.* v. *Coca-Cola Co.*,
    315 F.3d 101 (2d Cir. 2002)..................................................................24

*Raskin* v. *Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997)....................................................................17

*Reed Const. Data Inc.* v. *McGraw-Hill Companies, Inc.*,
    49 F. Supp. 3d 385 (S.D.N.Y. 2014)............................................. *passim*

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)....................................................45

*SEC* v. *Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013)......................................................4

*Stone* v. *866 3rd Next Generation Hotel, LLC*,
    2002 WL 1046706 (S.D.N.Y. May 22, 2002) ..................................13, 23

*Takeda Chem. Indus., Ltd.* v. *Mylan Labs., Inc.*,
    2006 WL 44053 (S.D.N.Y. Jan. 9, 2006) .........................................................................17, 20

*U.S. Commodity Futures Trading Comm'n* v. *Moncada*,
    2014 WL 2945793 (S.D.N.Y. June 30, 2014) .......................................................................36

*United States* v. *Aluminum Co. of America*,
    148 F.2d 416 (2d Cir. 1945) .................................................................................................24

*United States* v. *Williams*,
    506 F.3d 151 (2d Cir. 2007) ...................................................................................................3

*In re Wireless Tel. Servs. Antitrust Litig.*,
    385 F. Supp. 2d 403 (S.D.N.Y. 2005) ..................................................................................17

*Xerox Corp.* v. *Media Scis., Inc.*,
    660 F. Supp. 2d 535 (S.D.N.Y. 2009) ..................................................................................10

**Statutes, Rules, and Regulations**

15 U.S.C. § 2 ..............................................................................................................................3

N.Y. Gen. Bus. Law § 340 .........................................................................................................3

Fed. R. Evid. 403 .......................................................................................................................4

Fed. R. Evid. 702 ..............................................................................................................*passim*

**Other Authorities**

Daniel L. Rubinfeld, *Econometrics in the Courtroom*, 85 Colum. L. Rev. 1048
    (1985) .....................................................................................................................................11

Federal Judicial Center, *Reference Manual on Scientific Evidence* 322 (3d ed.
    2011) ......................................................................................................................................17

U.S. Dep't of Justice and Fed. Trade Comm'n, Horizontal Merger Guidelines .....................21, 23

Massimo Motta, *Competition Policy: Theory and Practice* (2004) .............................................24

## PRELIMINARY STATEMENT

The proposed testimony of plaintiffs' antitrust expert, Dr. Cristian Santesteban, is the very type of junk science Rule 702 is meant to protect against.  Dr. Santesteban, an economic consultant who lectures at Stanford, presents opinions based on fancy-sounding econometric models that have the potential to impress a lay jury.  But each of Dr. Santesteban's analyses, specially crafted for the purposes of this litigation and untethered from antitrust and finance academic literature, is built on the flimsiest of foundations:  cherry-picked variables, false assumptions, untested and unreliable methodologies, conflicting assertions, and sheer sloppiness in execution.  Dr. Santesteban's opinions and testimony should be excluded in their entirety.

*First*, Dr. Santesteban ████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
███████████████████████████████████████████ .

*Second*, Dr. Santesteban ████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████



*Third*, Dr. Santesteban ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████.

*Fourth*, Dr. Santesteban ████████████████████████████

## BACKGROUND AND LEGAL STANDARDS

In this Sherman Act Section 2 case, plaintiffs must show that JPMorgan willfully acquired or maintained market power in a relevant antitrust market, here the supposed "market" for long-dated silver futures, and that plaintiffs thereby suffered damages.  *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 686-87 (2d Cir. 2009); *see* 15 U.S.C. § 2; N.Y. Gen. Bus. Law § 340.  Specifically, plaintiffs contend that JPMorgan drove them out of the "market" for long-dated silver futures by exercising market power in late 2010 and early 2011 to suppress settlements, which are reference prices used for daily marking-to-market.  Dr. Santesteban's proffered opinions are designed to support many of these points: ██████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████

A proponent of expert testimony has the burden of establishing that the testimony is reliable, relevant and within the witness' expertise.  *See Amorgianos* v. *Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265-66 (2d Cir. 2002).  In assessing reliability, courts consider the indicia in Rule 702, "namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case."  *United States* v. *Williams*, 506 F.3d 151, 160 (2d Cir. 2007).  To determine whether expert testimony is relevant, courts assess "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S.

579, 591 (1993).[1]  Finally, expert evidence must relate to "the expert's scientific, technical, or other specialized knowledge."  Fed. R. Evid. 702.

Expert evidence is also subject to Rule 403, which permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403; *see SEC* v. *Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013).  "The Rule 403 inquiry is particularly important in the context of expert testimony, given the unique weight such evidence may have in a jury's deliberations."  *523 IP LLC* v. *CureMD.com*, 48 F. Supp. 3d 600, 644 (S.D.N.Y. 2014).  As a result, "the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."  *Daubert*, 509 U.S. at 595.

## ARGUMENT

**I.    DR. SANTESTEBAN'S** ███████████████████ **IS BASED ON UNRELIABLE AND IRRELEVANT ANALYSIS, AND IS THEREFORE INADMISSIBLE.**

To prevail on their monopolization claims, plaintiffs must prove a "relevant market" that includes "all products reasonably interchangeable by consumers for the same purposes."  *City of New York* v. *Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011).  Dr. Santesteban opines ███ ███████████████████████████████████████████ ██████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████████████ ██ ████████████████████████████████████  His methods

---

[1] Unless otherwise indicated, footnotes, objections, internal citations and quotation marks are omitted.

are unreliable and, in many cases, yield irrelevant results.  As a result, this opinion should be

excluded.  *See Amorgianos*, 303 F.3d at 266.

**A.  The Purported** ███████████████████ **Is Unreliable.**



███████████████ through a regression model, a tool used to "isolate the effect of one variable (the

'independent variable') on another variable (the 'dependent variable') by holding all other

potentially relevant variables (the 'control variables') constant."  *Reed Const. Data Inc.* v.

*McGraw-Hill Companies, Inc.*, 49 F. Supp. 3d 385, 396 (S.D.N.Y. 2014), *aff'd*, 638 F. App'x 43

---

[2] The experts in this case and the academic literature use the terms "SSNIP test" and "hypothetical monopolist/monopsonist test" (or "HMT") interchangeably, and so this brief follows the same convention.

[3] For example, if the posited market is Cheerios, the test would ask whether a hypothetical entity that controls the supply of Cheerios could unilaterally and profitably raise prices.  In that example, the market is likely drawn too narrowly, since if prices went up, a substantial number of consumers might switch to other breakfast cereals like Corn Flakes—*i.e.*, products that are "reasonably interchangeable"—rather than pay monopoly prices for Cheerios.

(2d Cir. 2016). 

There is no question that ███████████████████████ can be instructive under some conditions, but courts "must decide not only whether the methodology is reliable for some purposes, but whether it is reliable in light of the particular facts and circumstances of the particular case." *Lava Trading, Inc.* v. *Hartford Fire Ins.*, 2005 WL 4684238, at *9 (S.D.N.Y. Apr. 11, 2005).[5] ███████████████████████

███████████████████████ Dr. Santesteban thus "used his own version of the test, a version that had not been tested, had not been subjected to peer review, had no controlling

---

[4] Dr. Santesteban uses the ███████████████████████

[5] *See In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VII*"), 299 F. Supp. 3d 430, 505 n.59 (S.D.N.Y. 2018) ("We reject out of hand [the] suggestion that a model or statistical technique that is accepted and reliable in one context should be considered reliable and admissible in all contexts.").

[6] Defendants have likewise identified no such application.

standards, had no demonstrable showing of support within the scientific community, and was produced solely for purposes of the instant litigation." *Kentucky Speedway, LLC* v. *Nat'l Ass'n of Stock Car Auto Racing, Inc.*, 588 F.3d 908, 916 (6th Cir. 2009). Courts exclude expert testimony based on such unproven methods—including new and untested implementations of █████ ███████████████████—on these grounds alone. *Id.* (excluding implementation of ██████████████████); *see also In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 431 (S.D.N.Y. 2016) ("[T]he courtroom is not the place for scientific guesswork, even of the most inspired sort. Law lags science; it does not lead it."). Here, Dr. Santesteban's attempt to strike new ground is not just of unproven reliability: it is demonstrably a failure. It does not address ████████████████████████████████████████████████████; its usefulness depends on an unfounded assumption; it omits critical variables; and it falls apart with basic sensitivity testing.

               1.       **Dr. Santesteban's** ████████ **Does Not Address the Key Elements of a** ████████████████████.

Although Dr. Santesteban claims to employ established methods in antitrust economics, ████████████████████████████████████████████████. As this Court has explained, the hypothetical monopolist "test asks whether buyers would respond to . . . a *price increase* by opting for alternatives, thus rendering the price increase *unprofitable*." *Meredith Corp.* v. *SESAC LLC*, 1 F. Supp. 3d 180, 218 (S.D.N.Y. 2014) (Engelmayer, J.) (emphases added).[7] ██████████████████████████████████████████ ████████████████████████████████.

_____

[7] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

*a.*    *Dr. Santesteban's Test Fails to Consider* ███████

Dr. Santesteban recognizes that ████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████[8]

In fact, the implication of Dr. Santesteban's theory—█████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

---

██████████████████████████████████████████████████████
████████████████████████████████████

[8] *Cf. Emigra Grp., LLC* v. *Fragomen, Del Rey, Bernsen & Loewy, LLP*, 612 F. Supp. 2d 330, 355 (S.D.N.Y. 2009) ("Emigra has offered no proof that defendants could charge significantly more than a competitive price for any or all of its immigrations services without losing too many sales to other service providers to make its price unprofitable.").



          *b.*     *Dr. Santesteban's Test Does Not* ███████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████ This is a critical

distinction.  COMEX settlements are benchmarks used for margin calculations or to value

positions, but do not necessarily correspond with actual traded prices from the same day.  (*See*

Ex. F (Second Am. Compl., *Shak* v. *JPMorgan Chase & Co.*, No.15-cv-992-PAE, ECF No. 46

(S.D.N.Y. Jan. 28, 2016) ("SSAC")) ¶ 28; ██████████████████████) Indeed,

plaintiffs themselves allege that settlement prices throughout the relevant period in this case "had

no bearing on where the market had been trading the entire day."  (Ex. F (SSAC) ¶¶ 87-103.)

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████.  That makes his analysis irrelevant.  *See Nat'l Collegiate Athletic Ass'n* v. *Bd.*

*of Regents of Univ. of Okla.*, 468 U.S. 85, 109 n.38 (1984) ("Market power is the ability to raise

prices above those that would be charged in a competitive market.").

---

[9] ████████████████████████████████████████████████████████████████
████████████████████████████████████████

[10] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

2.    **Dr. Santesteban's Model Adopts the Unprecedented, Undefended, and Illogical Approach** ████████████████████████████ .

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ This is contrary to basic antitrust law, under which a large position as a seller is understood to afford market power as a seller, and vice versa. *See Xerox Corp.* v. *Media Scis., Inc.*, 660 F. Supp. 2d 535, 543 (S.D.N.Y. 2009) ("monopoly power" is "the power to charge a price higher than the competitive price"). For example, consider a company that controlled 90% of the widget market and sold its goods to hundreds of different buyers. The widget company could potentially have monopoly power, but it would not have monopsony power in the widget market. Instead, if it decided one day to become a buyer of widgets, it would now have to compete as a buyer against all of the existing hundreds of buyers.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ . And, despite the unprecedented nature of Dr. Santesteban's theory, he nowhere even acknowledges this bizarre approach, much less justifies it. *See Davis* v. *Carroll*, 937 F. Supp. 2d 390, 415 (S.D.N.Y. 2013) (While "novelty is not a sufficient basis for the exclusion . . . it is a basis for skepticism and caution."). As a result, Dr. Santesteban's model cannot show ███████████████████████████ .

3.    **Dr. Santesteban's** ███████ **Depends on the Unfounded Assumption** ███████ **Was "Exogenous."**

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████.[12]  *See* Daniel L. Rubinfeld, *Econometrics in the Courtroom*, 85 Colum. L. Rev. 1048, 1072-1077 (1985).  This is a standard problem in statistics that, if unsolved, leads to highly misleading results and the exclusion of expert opinions.  *See, e.g.*, *Reed*, 49 F. Supp. 3d at 403-04 (excluding analysis due to omitted variable bias).  Because Dr. Santesteban's ██████████████████████████, it should be excluded.

a.    *Dr. Santesteban's Opinion* ███████████████ *Is Unreliable.*

An economist who fails to address direction of causation between explanatory and dependent variables has done the equivalent of assuming that someone who stocked up on Cheerios during a sale must have triggered the lower prices, rather than the other way around.[13]

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

---

[11] ██████████████████████████████████████.
[12] ███████████████████████████████████
[13] ███████████████████████████████████████████████████
████████████████████████████████████

███████████████████████████████ There are at least five reasons to exclude
this opinion (and thus the █████████████ on which it depends).[14]

*First*, as he testified, █████████████████████████████████████████

████████████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████

█████████████████████████████████ *See Pension Comm. of Univ. of*
*Montreal Pension Plan* v. *Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 468 (S.D.N.Y. 2010).

*Second*, ████████████████████████████████████████████

████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████████ ███████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
█████████████████████████████████████████████████████
██████████████████████████████████████████████ ███████
████████████████████████████████████████████████████████

---

[14] ████████████████████████████████████████████████████
██████████████████████████████████████████████

[15] Dr. Santesteban defines the "Affected Period" in this case as "November 1, 2010 through February 28, 2011."
(Ex. A (Am. Santesteban Report) ¶ 2 n.4.)

[16] Dr. Santesteban's concession that he expects futures and forwards prices generally to converge—such that
divergences between the two means that one is "undervalued"—is strong evidence that the two are in fact in the
same market. (*See* Ex. B (Corrected Asker Report) ¶ 102 ("A presumption that OTC and COMEX prices should be
closely related is consistent with a view that they are sufficiently close substitutes that something close to the law of
one price should apply.").)

████████████████████████    *See Stone* v. *866 3rd Next Generation Hotel, LLC*, 2002 WL 1046706,

at *3 (S.D.N.Y. May 22, 2002) ("[T]here is no information proffered from which the Court could

gauge general acceptance of Krongelb's methodology, since he offers no methodology at all.").

   *Third*, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ ██ ██ █████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████

*See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, *("LIBOR VII")*, 299 F. Supp. 3d 430,

504 (S.D.N.Y. 2018) (Rule 702 requires "reliable data").

   *Fourth*, Dr. Santesteban's chosen variables do not permit the conclusion he draws. ██

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[17] Dr. Santesteban admitted this error in a proposed untimely amendment to his report several weeks after the close of expert discovery. ██████████████████████████) Defendants' request to strike this amendment is currently before the Court. *See* Defendants' Letter Motion for Local Rule 37.2 Conference, *Shak* v. *JPMorgan Chase & Co.*, No.15-cv-992-PAE, ECF No. 149 (S.D.N.Y. May 2, 2018).



In these circumstances, courts exclude as unreliable "models [that] fail to analyze intraday [futures] data, opting instead to rely on the daily settlement prices." *See LIBOR VII*, 299 F. Supp. 3d at 487.

*Fifth*, even if Dr. Santesteban had shown █████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ Dr. Santesteban's claim ████████████████████████████████████████ is speculative *ipse dixit*. *See Boucher* v. *U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("[E]xpert testimony should be excluded if it is speculative or conjectural").

   *b.*  *Dr. Santesteban's* ██████████ *Omits Critical Variables that Explain* ██████████████████████████.

As stated earlier, the purpose of a ██████████ is to isolate the effect of an explanatory variable ████████████████████████████) on the dependent variable (██████████ ██████████████████████. This does not work if "the association between two variables" is "driven largely by a 'third variable' that has been omitted from the analysis. For an easy example, among school children, there is an association between shoe size and vocabulary. However, learning more words does not cause feet to get bigger, and swollen feet do not make children more articulate. In this case, the third variable is easy to spot—age." *Bonton* v. *City of New York*, 2004 WL 2453603, at *3 n.32 (S.D.N.Y. Nov. 3, 2004). While a regression need not account for "*all* measurable variables" to be admissible, it will be excluded if it fails to reflect "the *major* variables." *Bickerstaff* v. *Vassar Coll.*, 196 F.3d 435, 449 (2d Cir. 1999) (emphasis added); *see Freeland* v. *AT & T Corp.*, 238 F.R.D. 130, 149 (S.D.N.Y. 2006) (regression that omits "two significant variables" is "essentially worthless" and "inadmissible").





This raises an obvious omitted variable



concern— ███████████████████████████████████████████

█████████████████████████████████████████.[22]  *See In re*

*Wireless Tel. Servs. Antitrust Litig.*, 385 F. Supp. 2d 403, 428 (S.D.N.Y. 2005) ("failure to test

for these obvious and significant alternative explanations renders [regression] analysis essentially

worthless").[23]

<p align="center">4.    **Dr. Santesteban's** ███████ **Produces Contradictory Results with
Minor Changes to the Model.**</p>

A reliable ████████ stands up to sensitivity testing—*i.e.*, variations in the parameters of

the model. ████████████████████████████████████████████████

██████████████████████████████████[24]  In contrast, "where, as here,

very minor changes in arbitrarily selected model parameters can entirely alter the model's

conclusions, that model is insufficiently robust to withstand the scrutiny of Rule 702." *Reed*, 49

F. Supp. 3d at 407. ████████████████████████████████████████

██████████████████████████████.  *See supra* Section I.A.3.b.

---

[22] Although not discussed in his report, Dr. Santesteban's backup materials include a sensitivity test where he purports to include a measure of JPMorgan's two-year and five-year OTC position ████████████████████ ████████████.  First, they are not mentioned or explained in Dr. Santesteban's expert report, and therefore cannot be the subject of admissible testimony.  *See Takeda Chem. Indus., Ltd.* v. *Mylan Labs., Inc.*, 2006 WL 44053, at *1 (S.D.N.Y. Jan. 9, 2006) (excluding "opinions that were not contained in [expert] report"). ████████ ██████████████████████████████████████████████████████████ ██████████████████████

[23] *See also Raskin* v. *Wyatt Co.*, 125 F.3d 55, 67-68 (2d Cir. 1997) (excluding expert report that "ma[de] no attempt to account for other possible causes" of phenomenon observed in data); *LIBOR VII*, 299 F. Supp. 3d at 487 ("Because Dr. Seyhun's models offer no means of controlling for the effects of economic events and business developments, we conclude that they cannot reliably support Dr. Seyhun's causation opinion.").

[24] *See also* Federal Judicial Center, *Reference Manual on Scientific Evidence* 322 (3d ed. 2011) ("The issue of robustness—whether regression results are sensitive to slight modifications in assumptions (e.g., that the data are measured accurately)—is of vital importance.").

Additional sensitivity testing confirms that ██████████ ████████ is too fragile to be the basis for admissible testimony. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██ ██████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

██████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[25] Plaintiffs are bound by their assertion that "the relevant product market in this case is long dated silver futures contracts, including spreads. Long dated is defined as at least one year from spot." (Ex. R (Pls.' Second Am. Responses and Objections to Defs' First Set of Interrogatories) No. 10; *see* Order, *Shak* v. *JPMorgan Chase & Co.*, No.15-cv-992-PAE, ECF No. 96 (S.D.N.Y. Oct. 19, 2018) ("The Court will not permit fundamental changes to plaintiffs' market definition(s) after November 8, 2017.").) ████████████████████████████████

██████████████████ *See Kramer* v. *Pollock-Krasner Found.*, 890 F. Supp. 250, 254 (S.D.N.Y. 1995) ("The 'relevant market' has been defined as 'the *narrowest market* which is wide enough so that products from adjacent areas or from other producers in the same area cannot compete on substantial parity with those included in the market.'" (emphasis added)); *Fed. Trade Comm'n* v. *Sysco Corp.*, 113 F. Supp. 3d 1, 26 (D.D.C. 2015) (explaining "narrowest market principle"). This is a reason to exclude Dr. Santesteban's testimony adopting both of his market definitions. *See LIBOR VII*, 299 F. Supp. 3d at 488-89 (excluding expert opinion in part because it was "internally inconsistent").

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

Nevertheless, despite knowing of testing that contradicted his results, Dr. Sanesteban swept it

under the rug, showing that ████████████ is nothing more than an attempt to "cherry-pick" data

points that would support a pre-ordained ████████ result. *Reed*, 49 F. Supp. 3d at 400.

Accordingly, there was no basis to disregard the results of ████████████████████

████████████████, which fundamentally undermine Dr. Santesteban's conclusions.

Dr. Santesteban's approach is remarkably similar to one excluded as unreliable by Judge

Oetken in *Reed*. There, plaintiffs' expert designed a regression to measure the impact of

defendants' allegedly anticompetitive conduct on national pricing of construction product

information (databases of construction projects used by contractors to bid on projects), by

comparing national and local pricing over time. *Reed*, 49 F. Supp. 3d at 406. However, instead

of testing national and local pricing separately, the expert, ████████████████, "pooled" the

data. *Id.* And like Dr. Santesteban, the *Reed* expert justified the pooling because "the unpooled

data le[d] to 'economically nonsensical' results" that "violated his 'prior expectations.'" *Id.*

And like here, defendants' expert "ran the regression analysis with the unpooled data and claims

simply to have reached the opposite result." *Id.* On this record, Judge Oetken held that the

expert's justification for pooling the data was "insufficiently 'scientific' to be admissible under

Rule 702." *Id.* at 407. The same result should follow for Dr. Santesteban's analysis.

**B.     The Purported** ██████████████████████ **Is Irrelevant Because It Does
        Not Evaluate** ████████████████████████**.**

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████  However,

Dr. Santesteban cannot cure deficiencies in his report by manufacturing new opinions at

deposition.  *See Takeda*, 2006 WL 44053, at *2 ("Discussion of a topic at a deposition is not a

substitute for an expert report.").  In any event, Dr. Santesteban fails to provide any methodology

(reliable or otherwise) justifying his conclusions.  ██████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████  Because

Dr. Santesteban fails to include any "testable methodology" that can "be challenged in some

---

26 ██████████████████████████████████████████████████████████
██████████████████████████████████████

objective sense," the analysis is unreliable and his testimony based upon it should be excluded.

*Colon ex rel. Molina* v. *BIC USA, Inc.*, 199 F. Supp. 2d 53, 78 (S.D.N.Y. 2001).[27]

    **C.**      **Dr. Santesteban's** ███████████████████████████████████████ **Is Unreliable and Irrelevant, Leaving Dr. Santesteban with No Analysis of** ███████████.

████████████████████████████████████████████████████

███████████████████ ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

---

[27] *See In re Mirena*, 169 F. Supp. 3d at 444 n.40 (S.D.N.Y. 2016) (noting that an "untested or untestable theory may be admissible" only where it had "general acceptance in the scientific community").

[28] U.S. Dep't of Justice and Fed. Trade Comm'n, Horizontal Merger Guidelines, § 4.1.1 (2010), https://www.justice.gov/sites/default/files/atr/legacy/2010/08/19/hmg-2010.pdf. *See also id.* at § 4.1.3 (listing ways of implementing the hypothetical monopolist test).



II.    **DR. SANTESTEBAN'S** ███████████████ **IS BASED ON UNRELIABLE AND IRRELEVANT ANALYSES, AND IS THEREFORE INADMISSIBLE.**

████████████████████████████████████████████████████

████████████████████████████████  As support, Dr. Santesteban relies primarily

on his "████████████████████  but for the reasons discussed in Section I above,

that ████████ is unreliable—████████████████████████████████████

████████████."  Dr. Santesteban offers a grab bag of additional analyses purporting to show

████████████████, all of which are either irrelevant or unreliable.



**A. Aside from Being Unreliable, Dr. Santesteban's ██████ " ██████ Is Irrelevant to His Opinion ██████.**

██████ In fact, the ██████ is irrelevant to ██████, and Dr. Santesteban should not be permitted to use it to support those opinions.

██████

**B. Dr. Santesteban's ██████ Uses Unjustified Metrics that Provide No Evidence ██████.**

██████ Dr. Santesteban never justifies or even explains this methodology, which is a sufficient reason to exclude his testimony based upon it. *Stone*, 2002 WL 1046706, at *3. Dr. Santesteban also provides no methodology for determining ██████

[32] ██████

[33] U.S. Dep't of Justice and Fed. Trade Comm'n, Horizontal Merger Guidelines §5.2 (2010), https://www.justice.gov/sites/default/files/atr/legacy/2010/08/19/hmg-2010.pdf.



. *See Davis*, 937 F.

Supp. 2d at 415 (excluding expert opinion that "does not list and justify the factors used to

calculate [appraisal] values").[34]

---

[34] *See also Caruso* v. *Bon Secours Charity Health Sys. Inc.*, 2016 WL 8711396, at *6 (S.D.N.Y. Aug. 5, 2016) ("Dr. Bush's opinions are unreliable because her report does not explain the methodology she used to reach her opinions."), *aff'd*, 703 F. App'x 31 (2d Cir. 2017).





**C.**     **Dr. Santesteban's Analysis Showing that** ██████████████████
           ████████████████ **Is Irrelevant to** ████████



eased

██████████████████████████████████████████████████████

█████████████████████████████████████████████████.  He

thus has not shown that the figures for JPMorgan are anything other than standard.

    **D.**    **Dr. Santesteban's Analysis** ███████████████ **Is Refuted by the Literature and the Facts, and** ██████████████████████████.

    To support his opinion that JPMorgan ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████.

Accordingly, each of Dr. Santesteban's opinions relating ████████████ should be excluded.

    **1.**    **Dr. Santesteban's Only Identified** ██████████████ **Is Unsupported by the Academic Literature, Contradicted by the Empirical Evidence, and Undermined by Dr. Santesteban's Own Testimony.**

    Dr. Santesteban identifies one factor ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████ ███████████████████████████████████████████

---

[38] ████████████████████████████████████████████████
████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████

　　█████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████. Dr. Santesteban's failure to conduct the test undermines

his opinion, *see Fed. Housing Fin. Agency* v. *Nomura Holding America, Inc.*, 2015 WL 539489,

at *6 (S.D.N.Y. Feb. 10, 2015), and the actual test results demolish it. █████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

　　████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████, ████████████████████████████████████████████

---
[39] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████

**2.      Dr. Santesteban's Opinion that** ███████████████
███████████████ **Is *Ipse Dixit* and Based on Unreliable Analysis.**

Dr. Santesteban "examined ████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████ Because Dr. Santesteban's conclusion is

"connected to existing data only by [his] *ipse dixit*," it should be excluded. *General Elec. Co.* v.

*Joiner*, 522 U.S. 136, 146 (1997).

As Dr. Santesteban conceded at deposition, he did not consult any of the extensive

financial economics literature ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████ All of these

factors were present in late 2010 and 2011, a time of historically high silver prices and volatility.

---



████████████████████████████████████████████████████████████

██████████████████████████

[40] ████████████████████████████████████████████████████

██████████████████████████████

███████████████████████████████ ); Ex. S (Pls. Responses and Objections to Defs.' Second Set of Interrogatories)
No. 24 (stating that "Scotia Bank" was "willing to trade silver futures contracts in these deferred contracts in the
relevant period").)

[41] ████████████████████████████████████████████████████

█████████████████████████████

In other words, not only is Dr. Santesteban's opinion ████████████████████████

unsupported; it also is refuted by the literature he failed to consult.[42]

While this is enough to exclude all of Dr. Santesteban's opinions ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████  The analysis is unreliable for at least four reasons.

*First,* ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████.  As a result, his work says nothing about trading of

long-dated silver futures.[43]

*Second,* █████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████  Dr. Santesteban does not acknowledge, explain, or justify this approach in his report.

---

[42] Confusingly, Dr. Santesteban himself recognizes that lower demand is an alternative explanation for wide bid-ask spreads for longer-dated silver futures: "[t]here is substantially less demand for trading in contracts with maturities far into the future. Thus, it is expected that less trading would take place and that this would cause wider bid-ask spreads." (Ex. A (Am. Santesteban Report) ¶ 49.). But lack of demand has nothing to do with barriers to entry. For example, if General Mills were to introduce beef-flavored Cheerios, an absence of consumer interest would hardly signify barriers to accessing the meat-flavored cereal market. (Ex. B (Corrected Asker Report) ¶ 159.)

[43] (*See* Ex. C (Santesteban Dep. Tr.) at 307:24-308:16 ("I don't think that I am directly saying anything about what was happening on the floor.").)

██████████████████████████████████████████████████████

█████████████████████████████████████

*Third*, Dr. Santesteban presents his data in a highly misleading way. ██████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████ ████████████████████████████████████████

████████████████████████████████

*Fourth* and finally, Dr. Santesteban failed to determine if his results were statistically

significant. ████████████████████████████████████████

█████████████████████████ Because Dr. Santesteban did not perform this analysis, he

has not justified relying on his results despite their statistical weakness.

████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████ This analysis suffers from some of the same problems

identified just above; ██████████████████████████████████████.

Additionally, it relies on arbitrary specifications: ████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████[45].████████████

─────────────────────────

[44]████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████████

[45]████████████████████████████████████████████████████
████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████ An analysis of market

conditions for some arbitrary period is not relevant.

      **E.**     **Dr. Santesteban's** ██████████████████ **Is Unsupported and
Unreliable, and Thus Inadmissible** ████████████████.

     Similar to his ' ████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████ ████   The analysis is not reliable. To start, Dr. Santesteban's ████████████ suffers

from the many of the same problems as his other ██████ analyses: ██████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

        ████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████ ████████████████████████████████████████████

██████████████████████████████████████████████

---

Plaintiffs' "Relevant Period" is December 1, 2010 through May 31, 2011. (*E.g.*, Ex. Y (Pls.' First Requests for
Admission) at 4).)

[46] ████████████████████████████████████.



And even setting aside this multitude of flaws,

[48] This means that Dr. Santesteban has never justified his modeling choices . More fundamentally, the fact that Dr. Santesteban could not even describe his model correctly undermines any

---

[47]

[48] Well after the close of discovery in this case, plaintiffs served an "errata" where Dr. Santesteban conceded the errors. (Ex. H (Second Santesteban Errata) ¶ 2.) Defendants' request to strike this proposed amendment is currently before the Court. *See* Defendants' Letter Motion for Local Rule 37.2 Conference, *Shak* v. *JPMorgan Chase & Co.*, No.15-cv-992-PAE, ECF No. 149 (S.D.N.Y. May 2, 2018).

suggestion that the variables were chosen for objective scientific reasons, as opposed to a means to obtain the results he desired.[49]  *See Reed*, 49 F. Supp. 3d at 407.

## III.    DR. SANTESTEBAN'S OPINION ██████████████ ██████████████████ IS UNRELIABLE AND INADMISSIBLE.

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████  Neither of these

opinions survives *Daubert* scrutiny.

As an initial matter, Dr. Santesteban's opinions should be excluded because, ████████

████████████, Dr. Santesteban is in no way qualified to opine on JPMorgan's █████

██████████████  *See supra* Section I.C. ████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████)  Accordingly, Dr. Santesteban has no basis to assess ██████████████.  *See*

*Morse/Diesel, Inc.* v. *Trinity Indus., Inc.*, 67 F.3d 435, 444 (2d Cir. 1995) (affirming decision precluding expert "from rendering opinions on subjects outside his field of expertise").  In any

---

[49] ████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

event, all of Dr. Santesteban's analyses of JPMorgan's █████████████████

███████████████

**A.     Dr. Santesteban's Analysis of** ████████████████ **Is Unreliable.**

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██ ██████████ The first opinion is wholly unsupported.  *See supra* Section I.A.3.a.  The second,

based on two analyses cribbed from another expert without attribution, is likewise unreliable.

**1.     Dr. Santesteban's Examination of** ██████████████ **Is
Someone Else's Work—That Itself Is Unreliable.**

Without reaching the methodological flaws of the two analyses Dr. Santesteban

borrowed, they should be excluded because they are almost entirely *not Dr. Santesteban's work*.

The basis for both analyses is a file called "OTC and Futures Term Structure Exposure.xlsm,"

████████████████████████████████

██████████████ However, plaintiffs' risk management expert, Mr. Craig Beevers,

claims to have created this document. ████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████ And while it may be acceptable for one expert to "rely upon another expert

to form an opinion" where such reliance is typical of "experts in the particular field," *In re M/V*



*MSC Flaminia*, 2017 WL 3208598, at *22 (S.D.N.Y. July 28, 2017), ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ Accordingly, it appears that Dr. Santesteban

has no idea where his data came from or how it was constructed. That is not consistent with

reliability. *See, e.g., Brown* v. *Mermaid Plaza Assocs., LLC*, 2016 WL 5802779, at *11

(E.D.N.Y. July 20, 2016), *report adopted,* 2016 WL 5716414 (E.D.N.Y. Sep. 30, 2016) ("expert

may not rely on another expert's opinion if the first expert is unfamiliar with the methods and

reasons supporting the second"); *In re Jackson Nat. Life Ins. Co. Premium Litig.*, 1999 WL

33510008, at *1 (W.D. Mich. Sept. 29, 1999) (striking report not authored by expert).

In addition, for the reasons set out in defendants' concurrently-filed motion to exclude the

proposed expert opinions of Craig S. Beevers, incorporated herein by reference, the dataset

████████████████████████████████████████████████████████████

████ ) is an unreliable portrayal of ████████████████ . That is another reason to exclude Dr.

Santesteban's opinions based on this data. *See LIBOR VII*, 299 F. Supp. 3d at 494 ("To be sure,

an expert may rely on the admissible opinions of another expert, but Dr. Netz is not entitled to

rely on Dr. Seyhun's unreliable opinions for support.").

      2.    **Dr. Santesteban's** ████████████████████ **Does Not Say Anything Reliable About** ████████████████ **.**

Even if ████████████████████████ were accurately set out in Mr. Beevers'

file, Dr. Santesteban's analysis of that data was unsound. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████ The methodology is unreliable and based on

incorrect assumptions.

      Starting with methodology, this opinion appears to be based on nothing more than Dr.

Santesteban eyeballing the charts over different time periods, which lacks any scientific rigor.

*U.S. Commodity Futures Trading Comm'n* v. *Moncada*, 2014 WL 2945793, at *3 (S.D.N.Y.

June 30, 2014) (excluding expert report that "fails to use any recognized methodology-or, for

that matter, any methodology at all" and instead relies on "eyeballing" data). ███████████

████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████

      Dr. Santesteban's analysis also is based on a misunderstanding of how ████████████

which is unsurprising, given that he has no expertise on the topic. ████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

█████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████). *See LIBOR VII*, 299 F. Supp. 3d at 481-82 ("fundamental

disagreements between a party's *own* experts" is basis for excluding the testimony of both).  For

these reasons, Dr. Santesteban's inexpert musings based on eyeballed data should be excluded.

        **3.**        **Dr. Santesteban's** ███████████████████
██████████████████████**Is Based on an Arbitrary Date Selection**
**and Disregards Market Factors for** ████████████████.

    For Dr. Santesteban's second analysis of ██████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

███████████  Because ████████████████████ is built on the same borrowed and

unreliable charting of ███████████████ discussed above, it should be excluded.  *See supra*

Section III.A.3.  In addition, ███████████████████ introduces several new errors.

        ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████.  (*See, e.g.*, Ex. F (SSAC) ¶ 123 (alleging that

JPMorgan manipulated futures prices through 2012); ████████████████████████████

████████████████████████████████████████ "[I]t is

axiomatic that, when designing an experiment to test whether an observed result was caused by

given variable, the control or benchmark group must lack that variable."  *Nomura*, 2015 WL

539489, at *5.[50] ████████████████████████████████████

███████████████████████████████████████████.

    Moreover, Dr. Santesteban's results are also self-contradictory, ████████████████

████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

███████████████ "While sporadic findings of artificiality in clean periods may be

attributable to statistical noise, this exactly-backwards relationship suggests either an unreliable

model or a deeper flaw in [plaintiffs'] theory of the case." *LIBOR VII*, 299 F. Supp. 3d at 480.

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

**B.**    **Dr. Santesteban's Theories on** ██████████████████████
        ██████ **Are Unreliable.**

████████████████████████████████████████████

██████████████████████████████████████████████.

---

[50] *See also*, *e.g.*, *LIBOR VII*, 299 F. Supp. 3d at 479 ("We seriously question whether a period with artificiality on half of days, or even 29% of days, may be fairly characterized as a 'clean' period. . . . [If Plaintiffs had alleged misconduct during the 'clean' periods], the reliability of Dr. Seyhun's regressions . . .would be seriously undermined by their incorporation of data pervasively affected by that very conduct.").

███████████████████████████████████████████████████

██████████████████████████████████████. To that end,

Dr. Santesteban conducts two analyses, neither of which is reliable.

         **1.**      **Dr. Santesteban's Opinions** ████████████████████████
           ███████████████ **Are Inconsistent with His Other Theories, Are Presented in a Highly Misleading Fashion, and Fail to Account for Significant Market Factors Affecting Settlements.**

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████.

      The first thing to note is that Dr. Santesteban's analysis has nothing to do with JPMorgan.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████. *Daubert*, 509 U.S. at 591 ("Expert testimony which does

not relate to any issue in the case is not relevant and, ergo, non-helpful.").

      This analysis by Dr. Santesteban also contradicts his (and plaintiffs') theory ██

███████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████. This inconsistency

between Dr. Santesteban's various theories and models casts serious doubt on their reliability. *See LIBOR VII*, 299 F. Supp. 3d at 478 ("internally inconsistent nature of [expert's] models seriously undermine their reliability").[51] And "fundamental disagreements between a party's *own* experts" are a basis for excluding the testimony of both. *Id.* at 481-82; *see Deutsch* v. *Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 469 (E.D.N.Y. 2011) (same).

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████  █████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████  ██████████████████████████████████████

████████████████████████████████████████████████████████████.

In any event, Dr. Santesteban is able to identify anomalies only by presenting his data in a misleading way. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[51] *See In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Secs. Litig.*, 281 F.R.D. 174, 181 (S.D.N.Y. 2012) (excluding as "unreliable and unpersuasive" expert's analysis that was "internally inconsistent").

[52] ██████████████████████████████████████████████████████████
██████████████████████████████████████

[53] This analysis should also be excluded for the reasons discussed in defendants' concurrently-filed motion to exclude the proposed expert opinions of Martin D. D. Evans, who performed a nearly identical analysis.

████████████████████ ████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████ Testimony

based on a "misleading" presentation of the data should be excluded. *See Marria* v. *Broaddus*,

200 F. Supp. 2d 280, 291 (S.D.N.Y. 2002).

   2.    **Dr. Santesteban's** ███████████████████████████
██████████████████ **Is Contradicted by Plaintiffs and**
**Unfounded in the Record.**

███████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████ This opinion is based on the incorrect

assumption that ███████████████████. *See In re Fosamax Prod. Liab. Litig.*, 807

F. Supp. 2d 168, 183 (S.D.N.Y. 2011), *aff'd*, 707 F.3d 189 (2d Cir. 2013) (excluding opinion

based on "false assumption"). ████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████.

   ███████████████████████████████████████

███████████████████████████████████████████████

---

<sup>54</sup> ███████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████████.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████  ███████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████

## IV.    DR. SANTESTEBAN'S REMAINING OPINIONS ARE UNRELIABLE, IRRELEVANT, OR BOTH, AND THEREFORE INADMISSIBLE.

### A.    Dr. Santesteban's Discussion of JPMorgan's "████████████████ ████████████████████████████ **Is Irrelevant.**

███████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

-----

[55] ██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████

[56] ██████████████████████████████████████████.

**B.    Dr. Santesteban's Opinion** ███████████████████████ **Is Baseless and Fails to Consider Objective Metrics of Competition.**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ However, it is well established that an antitrust plaintiff "must allege and prove harm, not just to a single competitor, but to the competitive process, *i.e.*, to competition itself." *NYNEX Corp.* v. *Discon, Inc.*, 525 U.S. 128, 135 (1998). ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████.

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ Instead, plaintiffs were JPMorgan's counterparties/customers, and as such, cannot claim to have suffered anticompetitive harm by JPMorgan charging *lower* prices, since "cutting prices in order to increase business often is the very essence of competition." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 594 (1986); *see Atl. Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 340 (1990) ("Low prices benefit consumers regardless of how those prices are set.").

Had Dr. Santesteban bothered to look at any metrics for competition, he would have seen no reduction. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████.



Dr. Santesteban's testimony concerning ███████ should be excluded.

**C.    Dr. Santesteban's Opinions on** ████████████ **Are Irrelevant, Unreliable, and Prejudicial.**

**D.    Dr. Santesteban's Recitation of** ████████████ **Are Unhelpful to the Trier of Fact.**

The balance of Dr. Santesteban's report is nothing more than ███████████ and should be

excluded. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004).[58]

## CONCLUSION

The expert opinions and testimony of Dr. Cristian Santesteban should be excluded in their entirety.

---

[57] ████████████████████████████████████████████████

[58] *See Luitpold Pharms., Inc.* v. *Ed Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *3 (S.D.N.Y. Sept. 16, 2015) ("narration of facts of the case may easily invade the province of the jury"); *Cross Commerce Media, Inc.* v. *Collective, Inc.*, 2014 WL 11343849, at *8-9 (S.D.N.Y. Aug. 21, 2014) (stating that where an expert "is merely reciting what is on the face of a document produced during discovery, he is doing no more than that which the finder of fact could him or herself do, and thus his report may be precluded on this basis alone"), *vacated in part on other grounds*, 841 F.3d 155 (2d Cir. 2016).

Dated: June 15, 2018

/s/ Amanda F. Davidoff
Daryl A. Libow
Amanda F. Davidoff
SULLIVAN & CROMWELL LLP
1700 New York Ave., N.W.
Suite 700
Washington, D.C.  20006-5215
Tel:  (202) 956-7500
Fax:  (202) 293-6330
libowd@sullcrom.com
davidoffa@sullcrom.com

Akash M. Toprani
Karl L. Bock
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004-2498
Tel:  (212) 558-4000
Fax:  (212) 558-3588
toprania@sullcrom.com
bockk@sullcrom.com

*Counsel for defendants JP Morgan Chase & Co., J.P. Morgan Clearing Corp., J.P. Morgan Securities LLC, and J.P. Morgan Futures, Inc. (now known as J.P. Morgan Securities LLC)*