UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Daniel Shak, et al., | § § | |
| v. | § § | No. 15cv992(PAE) |
| JPMorgan Chase & Co., et al. | § § | |

| | | |
|---|---|---|
| Thomas Wacker, et al., | § § | |
| v. | § § | No. 15cv994(PAE) |
| JPMorgan Chase & Co., et al. | § § | |

| | | |
|---|---|---|
| Mark Grumet, et al., | § § | |
| v. | § § | No. 15cv995(PAE) |
| JPMorgan Chase & Co., et al. | § § | |

## MOTION OF THE UNITED STATES
## FOR A SECOND EXTENSION OF THE STAY

The United States, through its undersigned counsel, respectfully submits this Motion for a Second Extension of the Stay. For the reasons set forth below, the United States respectfully requests that the Court extend the current stay of these civil cases through the conclusion of a related criminal prosecution pending in *United States v. Smith, et al.*, Case No. 19 CR 669 (N.D. Ill.).

The criminal case in *Smith* covers a broader range of conduct, events, and time than is presently addressed in these civil cases, however, the criminal case does overlap with the conduct at issue in these cases. The government respectfully suggests that the requested stay would benefit this Court and all parties by

minimizing redundant litigation, narrowing the scope of discovery and issues to be adjudicated in this case, and relieving individuals of the choice of having to potentially invoke their rights against self-incrimination.

Prior to filing this motion, the government conferred with Sullivan & Cromwell LLP, counsel for the defendants, who stated that they do not oppose the government's request to extend the stay through the resolution of the criminal case. The government also conferred with plaintiffs' counsel who stated they opposed the government's request for a stay and planned to file a submission with the Court on the issue, which may include a request for leave to amend their complaint.

## BACKGROUND

On November 26, 2018, the government intervened in these civil cases, and on November 30, 2018, the Court stayed the cases until May 31, 2019. On June 10, 2019, the Court granted the government's motion to extend the stay until October 31, 2019. During the pendency of the stays, the government has been conducting an ongoing criminal investigation into precious metals trading activity at J.P. Morgan Chase Bank, N.A. ("JPMorgan").

On August 22, 2019, a grand jury in the United States District Court for the Northern District of Illinois returned a sealed 14-count indictment (the "Indictment"), charging three current and former precious metals traders at JPMorgan—Gregg Smith, Michael Nowak, and Christopher Jordan—with conspiracy to conduct or participate in an enterprise engaged in a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); conspiracy to commit price manipulation, bank fraud, wire

fraud affecting a financial institution, commodities fraud, and spoofing, in violation of 18 U.S.C. § 371; bank fraud, in violation of 18 U.S.C. § 1344(1); and wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343. (Indictment ¶¶ 21, 44, 51, 54, 57, 59, 61, 63, 65 & 67, *United States v. Smith et al*, Case No. 19 CR 669, Dkt. No. 1 (N.D Ill. Aug. 22, 2019).) The Indictment also charged Nowak and Smith with attempted price manipulation, in violation of 7 U.S.C. § 13(a)(2); commodities fraud, in violation of 18 U.S.C. § 1348(1); and spoofing, in violation of 7 U.S.C. §§ 6c(a)(5)(C) and 13(a)(2). (*Id.* ¶¶ 51, 54, 69, 71, 73 & 75.)

According to the Indictment, beginning in or around May 2008 and continuing until at least in or around August 2016, Smith, Nowak, and Jordan, together with their co-conspirators, placed orders to buy and sell precious metals futures contracts with the intent to cancel those orders before execution, including in an attempt to artificially affect prices and to profit by deceiving other market participants. (*Id.* ¶¶ 25, 44(e), 73, 75.) The Indictment alleges, among other things, that Smith, Nowak, and Jordan and their co-conspirators placed one or more orders for precious metals futures contracts on one side of the market which, at the time Smith, Nowak, and Jordan placed the orders, they intended to cancel before execution. (*Id.* ¶ 25(b).) By placing these orders for precious metals futures contracts, Smith, Nowak, and Jordan and their co-conspirators created the false appearance of substantial supply or demand in order to fraudulently induce other market participants to react to their deceptive market information. (*Id.* ¶¶ 25(f)-(k), 63, 65.) This increased the likelihood that one or more of their opposite-side orders would be filled by other market

participants, allowing Smith, Nowak, and Jordan, and their co-conspirators, to generate trading profits and avoid losses for themselves and other members of the precious metals desk at "Bank A," the precious metals desk itself, and, ultimately, Bank A. (*Id.* ¶ 25(j).) In addition, as it relates more specifically to the subject matter at issue in these civil actions, the Indictment alleges:

> 36. On September 24, 2009, in an electronic chat, [co-conspirator ("CC")]-3 had the following conversation with CC-4:
>
> CC-3: I offered a lot of sil switches 100 to 200 a switch. Spoofed locals aftewr number and hopefully mr s h a q
>
> CC-4: good man

(*Id.* ¶ 36.) Finally, also as alleged in the indictment, Smith, Nowak, and Jordan and their co-conspirators defrauded JPMorgan's clients who had bought or sold "barrier options" by trading precious metals futures contracts in a manner that attempted to push the price towards a price level at which JPMorgan would make money on the option ("barrier-running"), or away from a price level at which JPMorgan would lose money on the option ("barrier-defending"). (*Id.* ¶ 26.)

On September 16, 2019, Smith, Nowak, and Jordan were arrested, and the Indictment was unsealed. On October 22, 2019, Nowak and Smith were arraigned before U.S. District Court Judge Edmond E. Chang, and on October 25, 2019, Jordan filed a waiver of his appearance at an arraignment. No trial date has been set in the criminal case and the next status hearing is scheduled for December 5, 2019.

**DISCUSSION**

**I.    A Stay is Warranted through the Resolution of the Criminal Case**

This Court has inherent authority to enter a stay in these civil actions, deriving from the broader power inherent in every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). When considering whether to stay a civil action pending the resolution of a criminal case, courts in the Second Circuit consider six factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 99 (2d Cir. 2012) (quotation omitted). The government recognizes these cases have been pending before the Court for lengthy period of time, but the government respectfully submits that each of these factors supports a continued stay in these civil cases through the resolution of the criminal case in *United States v. Smith, et al.*

*Overlap of issues in between the civil and criminal cases.* The Indictment alleges that individuals associated with JPMorgan's precious metals desk conducted the affairs of the desk through a pattern of racketeering activity between May 2008 and August 2016. (Indictment ¶ 21.) While the time period and types of activity occurring on JPMorgan's precious metals desk is broader than the allegations in these civil cases, the conduct at issue in the Indictment does overlap, in part, with the

allegations in these civil cases. (*See* Indictment ¶ 36 ("CC-3: I offered a lot of sil switches 100 to 200 a switch. Spoofed locals aftewr number and hopefully mr s h a q").) The overlap between the allegations in these civil cases and the allegations in the Indictment—even though the allegations here are more focused than the broader scope of the Indictment—weighs in favor of extending the stay. *See Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues.") (quotation omitted).

*Status of the criminal case.* The defendants charged in the Indictment—Smith, Nowak, and Jordan—are not defendants in these civil actions. Generally, "[t]he strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." *Volmar Distributors*, 152 F.R.D. at 39; *see also Louis Vuitton*, 676 F.3d at 101 (recognizing that indictment in parallel criminal proceeding "supported the entry of a stay"). Nonetheless, while not a named defendant, before the Court stayed these civil cases, the plaintiffs sought to re-open discovery and re-depose Nowak, among others. (*See* November 14, 2018 Kirby McInerney LLP letter (Dkt. No. 245).) If the stay was lifted in these cases, therefore, the plaintiffs presumably would renew their request to re-depose Nowak, which would force him to decide whether to assert his Fifth Amendment right against self-incrimination. *See SEC v. Treadway*, No. 04 CIV.3464 VM JCF, 2005 WL 713826, at *4 (S.D.N.Y. Mar. 30, 2005) ("[I]n the absence of a stay, [defendants] are faced with the dilemma of making potentially incriminating

admissions during discovery or asserting their Fifth Amendment rights, on the basis of which the civil jury can draw an adverse inference."). The status of the criminal case, and the likelihood that at least one of the defendants charged in the Indictment will be deposed if the stay is lifted, weigh in favor of extending the stay.

*The interests of the plaintiffs.* The plaintiffs in this case oppose the government's request to extend the stay and the government understands that they are likely to seek leave to amend their complaint and re-open discovery. To the extent that the plaintiffs claim any prejudice by an extension of the stay, that argument is undercut by the fact that one likely basis the plaintiffs may cite as a reason to grant them leave to amend their Second Amended Complaint is grounded in evidence uncovered through the government's investigation. Specifically, the Indictment contains allegations regarding a September 24, 2009 communication between alleged co-conspirators that appears to relate to spoofing in connection plaintiff Daniel Shak and other "locals" on the trading floor. (*See* Indictment ¶ 36 ("Spoofed locals aftewr number and hopefully mr s h a q").) This communications pre-dates the relevant period covered in the Second Amended Complaint—late 2010 and early 2011—and the government expects this communication likely will be one basis for a request to amend the Second Amended Complaint to expand its relevant time period. To the extent, therefore, that the plaintiffs believe they would suffer any prejudice by extending the stay through the resolution of the criminal case, that is outweighed by the benefits that will inure to the plaintiffs from both the additional evidence that may come to light in the government's criminal case as well as the likely narrowing

of issues in dispute in these civil cases. *See In re Worldcom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2002 WL 31729501, at *8 (S.D.N.Y. Dec. 5, 2002) ("The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation."). Continuing the stay through the end of the criminal case in *United States v. Smith, et al.* will not prejudice the plaintiffs in these civil cases.

*The interests of the defendants.* The defendants do not oppose the government's request to extend a stay. While not a named party in these civil cases, Nowak is charged in the Indictment and, as discussed above, the plaintiffs in these civil cases have sought to re-depose him, which may lead him to assert his Fifth Amendment right against self-incrimination. That assertion by Nowak—still a current JPMorgan employee—may be the basis for an adverse inference against the defendants. The lack of any opposition by the defendants, and the potential for an adverse inference if Nowak asserts his Fifth Amendment rights, weighs in favor of extending the stay. *Cf. Treadway*, 2005 WL 713826, at *4 (recognizing the quandary defendants face when choosing between submitting to testimony that could lead to inculpatory admissions and asserting their Fifth Amendment rights that would draw an adverse inference).

*The interests of the Court.* When evaluating this factor, courts often look to the "convenience of the court in the management of its cases" as well as the "efficient use of judicial resources." *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d

573, 576 (S.D.N.Y. 2001) (internal quotation marks and citations omitted). The government fully recognizes that these civil cases have been pending for a long period of time, but the government respectfully suggests that these civil cases are still "likely to benefit to some extent from the Criminal Case no matter its outcome." *SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus.*, No. 11-cv-6500 (RA), 2012 WL 5505738, at *4 (S.D.N.Y. Nov. 9, 2012). By extending the stay in these cases, the Court can "avoid a duplication of efforts and a waste of judicial time and resources." *SEC v. Shkreli*, No. 15-cv-7175 (KAM), 2016 WL 1122029, at *6 (E.D.N.Y. Mar. 22, 2016) (citation omitted). The criminal case likely will resolve issues of fact common to these civil cases and may reduce the number of issues to be decided in subsequent proceedings. *See SEC v. Contorinis*, No. 09-CV-1043 (RJS), 2012 WL 512626, at *3 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding."). Further—and particularly if the requested stay is through the termination of the criminal proceedings—resolution of the criminal case could narrow the scope of issues in this civil litigation, including the scope of re-opening discovery, which would benefit all parties, as well as judicial economy. *See, e.g., SEC v. Blaszczak*, No. 17-CV-3919 (AJN), 2018 WL 301091, at *3 (S.D.N.Y. Jan. 3, 2018) ("The Criminal Case will resolve issues of fact common to the civil case and may reduce the number of issues to be decided in subsequent proceedings in this case."); *State Farm Lloyds v. Wood*, No. CIV A H-06-503, 2006 WL 3691115, at *3 (S.D. Tex. Dec. 12, 2006) ("The

outcome of the criminal proceedings may guide the parties in settlement discussions and potentially eliminate the need to litigate some or all of the issues in this case."). The efficient use of judicial resources, therefore, weighs in favor of extending the stay.

*The public interest.* "[T]he public's interest in the effective enforcement of the criminal law is the paramount public concern." *Shkreli*, 2016 WL 1122029, at *7. As is true here, "[b]ecause of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here." *Transworld*, 886 F. Supp. at 1140. Further, "a stay of discovery is often necessary where liberal discovery rules will allow a litigant to undermine, or gain an unfair advantage in, a potential criminal prosecution which parallels the subject matter of the civil action." *Treadway*, 2005 WL 713826, at *4; *see also Morris v. Am. Fed'n of State, Cnty. & Mun. Emps.*, No. 99-CV-5125, 2001 WL 123886, at *2 (S.D.N.Y. Feb. 9, 2001) ("The public has an interest in ensuring the criminal discovery process is not subverted."). While the defendants charged in the Indictment are not parties to these civil cases, they may still reap the benefit of civil discovery, and may be able to circumvent the criminal discovery process, if discovery were to proceed in these civil cases. *See Treadway*, 2005 WL 713826, at *4 (staying the deposition of witnesses in an SEC civil case until the witnesses testify in a related criminal case because counsel for the defendants in the criminal case "could certainly monitor the depositions [in the civil action] and use it to the advantage of the defense in the criminal case"). Extending the stay through the resolution of the criminal case in *United States v. Smith, et al.*, therefore, would serve the public's interest of the effective enforcement

of the criminal laws without any potential interference arising from the civil discovery process.

## CONCLUSION

For these reasons, the Motion of the United States for a Second Extension of the Stay seeking to extend the stay in these civil cases through the conclusion of the related criminal prosecution against in *United States v. Smith, et al.*, Case No. 19 CR 669 (N.D. Ill.) should be granted.

Dated: October 31, 2019

Respectfully submitted,

ROBERT A. ZINK
Chief, Fraud Section

By:   /s/ *Matthew F. Sullivan*
Avi Perry, Assistant Chief
Matthew F. Sullivan, Trial Attorney
Criminal Division
U.S. Department of Justice
1400 New York Ave., NW
Washington, DC 20530
(203) 821-3797 (Perry)
(202) 353-6200 (Sullivan)
Avi.Perry@usdoj.gov
Matthew.Sullivan2@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Matthew F. Sullivan, hereby certify that on October 31, 2019, I electronically filed the foregoing Motion of the United States for a Second Extension of the Stay with the Clerk of Court using the CM/ECF electronic filing system, which will automatically send a Notice of Electronic Filing to all parties.

    /s/*Matthew F. Sullivan*
Matthew F. Sullivan
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section